IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2025

## EDDIE HARRIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 16-02944     Chris Craft, Judge

_____

**No. W2024-01222-CCA-R3-PC**

_____

The Petitioner, Eddie Harris, appeals the denial of his petition for post-conviction relief from his 2016 convictions of two counts of first degree premeditated murder, two counts of first degree murder in the perpetration of a robbery, and one count of possession of a handgun by a convicted felon. On appeal, the Petitioner argues the post-conviction court erred by failing to find that he received the ineffective assistance of counsel due to trial counsel's failure to (1) present a witness in support of his defense, (2) cite favorable law during an evidentiary hearing or make an offer of proof following the trial court's adverse ruling, and (3) object to alleged inconsistencies in the grand jury process. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

J. Jeffrey Lee, Covington, Tennessee, (on appeal and as counsel/elbow counsel at post-conviction hearing); and Eddie Harris, Whiteville, Tennessee, pro se (at post-conviction hearing), for the appellant, Eddie Harris.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Steve Mulroy, District Attorney General; and Abby Wallace and Scott Bearup, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.     FACTUAL AND PROCEDURAL HISTORY

## A. TRIAL

This case arises from the murders of the victims, Robert DeAngelo Dale and Aaron "Rome" Moore. *State v. Harris*, No. W2017-01706-CCA-R3-CD, 2018 WL 6012620, at *1 (Tenn. Crim. App. Nov. 15, 2018), *perm. app. denied* (Tenn. Mar. 28, 2019). The evidence adduced at the Petitioner's trial indicated that on the night of February 10, 2014, Andrew Barfield, the Petitioner, the victims, and several other individuals gathered at Mr. Moore's apartment in Memphis. *Id*. Visitors arrived and left Mr. Moore's apartment over the course of several hours until, at some point, only Mr. Barfield, the Petitioner, and the victims remained. *Id*. at *1-2. Mr. Dale asked Mr. Barfield to run an errand, and Mr. Barfield left the apartment. *Id*. at *2. While he was away, John Brumit, a maintenance worker employed by the apartment complex, received a report from a resident that water was leaking from the above apartment into her bathroom. *Id*. at *3. Mr. Brumit entered the above apartment to investigate the water leak and found Mr. Moore dead in his bedroom and Mr. Dale in the adjoining bathroom, "flailing on the floor and bleeding profusely." *Id*.

Two days after the murders, the Petitioner visited his cousin, Meosha Thomas, at her home. *Id*. at *5. Ms. Thomas recalled being "shock[ed]" when the Petitioner arrived at her doorstep because he had never visited her home before. *Id*. She explained that there was a longstanding family feud between the two branches of the Petitioner's family and that she believed the Petitioner did not "like us." *Id*. During a conversation with Ms. Thomas, the Petitioner denied killing the victims. *Id*.

Several days after the Petitioner visited her home, Ms. Thomas learned that her son, Mark Thomas, "was with" the Petitioner. *Id*. at *5. Arthur Morrison, Ms. Thomas's brother and the Petitioner's cousin, learned Mr. Thomas was with the Petitioner and called Crime Stoppers because he was afraid for Mr. Thomas's safety. *Id*. at *6. Mr. Morrison ultimately agreed to cooperate with the police in apprehending the Petitioner. *Id*. Mr. Morrison called the Petitioner and, during their discussion about the victims' murders, the Petitioner told Mr. Morrison that he "had to do what he had to do"; that he "robbed two people," taking money and drugs from them; and that he "had killed." *Id*. at *6, *8.

Mr. Morrison described his relationship with the Petitioner as "close," noting that a few weeks before the victims' murders, the Petitioner called Mr. Morrison to ask whether Mr. Morrison would "perform a marriage ceremony for the [Petitioner] and his girlfriend." *Id*. at *6. Vincent Harris-Henderson, the Petitioner's brother, testified during the Petitioner's case-in-chief regarding the family feud between the Morrison and Harris branches of the Petitioner's family. *Id*. Mr. Harris-Henderson explained this feud began in the 1980s, and the two branches of the family had "not like[d] each other" since. *Id*. He noted that he "knew nothing" about the victims' murders. *Id*.

- 2 -

Upon this proof, the jury convicted the Petitioner as charged, and, following a sentencing hearing, the trial court imposed an effective sentence of life plus twelve years. *Id*. at \*6. The Petitioner appealed, arguing that the evidence was insufficient to sustain his murder convictions and that the trial court erred by admitting inadmissible hearsay. *Id*. at \*1. This court affirmed the judgments of the trial court, and the Tennessee Supreme Court denied review on March 28, 2019. *Id*.

### B.    POST-CONVICTION PROCEEDINGS

On January 29, 2020, the Petitioner filed a petition for post-conviction relief, alleging he received the ineffective assistance of counsel on several bases, many of which are not presented for our review on appeal.[1] On February 6, 2020, the trial court appointed initial post-conviction counsel, who withdrew on April 24, 2020. The trial court appointed substitute counsel on April 29, 2020, and the State filed a response to the petition for post-conviction relief on October 30, 2020. The Petitioner filed an amended petition, styled as his "Second Amended Petition,"[2] on June 3, 2022.

The post-conviction court held an evidentiary hearing on July 29, 2022. Trial counsel testified he believed the State's evidence against the Petitioner at trial was not "particularly strong" and that his defense involved a theory that "there could have been, at least, two other people who . . . killed these victims and that it wasn't necessarily [the Petitioner]." In his opinion, the State's "strongest witnesses" were members of the Petitioner's family, including Ms. Thomas and Mr. Morrison. Accordingly, trial counsel "wanted to show that their testimony was biased" due to the ongoing feud between the Morrison and Harris branches of the Petitioner's family. Trial counsel recalled calling Mr. Harris-Henderson to testify about the feud but noted that the trial court had restricted certain aspects of Mr. Harris-Henderson's testimony.

Trial counsel testified he had been licensed since 1997 and had since tried approximately 100 criminal cases. Trial counsel recalled he had also represented the Petitioner on a previous charge of aggravated robbery in either 2004 or 2005. He believed he and the Petitioner developed and maintained a good working relationship leading up to and during the Petitioner's trial but noted that "after [the Petitioner] got convicted, our relationship deteriorated." Trial counsel recalled preparing for the Petitioner's case and reviewing discovery with the Petitioner prior to trial. Trial counsel also recalled the Petitioner was not interested in negotiating any plea agreements because he maintained his

---

[1] The Petitioner also challenged the sufficiency of the convicting evidence, alleged prosecutorial misconduct, and other alleged trial court errors which the Petitioner does not raise on appeal.

[2] The record contains no previous amendment to the Petitioner's post-conviction petition.

innocence, but trial counsel nevertheless discussed certain plea offers made by the State with the Petitioner prior to trial. Trial counsel stated that prior to trial, he discussed with the Petitioner what he believed to be the strengths and weaknesses in the State's evidence against the Petitioner and cautioned the Petitioner against testifying due to his "many prior convictions." He also recalled filing a motion for new trial on the Petitioner's behalf but was unsure whether he represented the Petitioner at the hearing on the motion. He maintained he prepared for the Petitioner's trial "to the best of [his] ability."

The Petitioner testified trial counsel should have objected to the trial court's limitation of Mr. Harris-Henderson's testimony regarding the feud between the Morrison and Harris branches of the Petitioner's family because "he didn't get the version of the facts that had happened." The Petitioner explained that the feud began after "[Mr.] Morrison's uncle raped . . . my next to oldest brother and my dad killed him." The Petitioner argued trial counsel performed deficiently throughout his trial, presenting a number of additional claims not raised in this appeal. He asserted that this deficient performance prejudiced his defense.

The Petitioner stated that he also intended to raise additional claims of trial counsel's ineffective assistance but was unprepared to present evidence to substantiate those claims because he "didn't think that [he] was going to have [his] hearing today." He averred that he still needed to listen to a recording of his trial to determine whether portions of his transcript were missing in order to argue the remainder of his claims. Accordingly, the post-conviction court continued the remainder of the hearing to a later date to permit the Petitioner the opportunity to more fully examine the record and file any necessary amendments.

On September 26, 2022, the Petitioner[3] filed a "Third Amended Petition,"[4] in which he alleged there were deficiencies in his grand jury proceedings, "as proven by the dates and signatures on the indictment." He also argued he received the ineffective assistance of counsel by trial counsel's failure to "capitalize[] upon" certain inconsistencies in Mr. Morrison's testimony. On March 31, 2023, the Petitioner filed an unsigned "Amended Post-Conviction Petition by *Pro Se* Petitioner," in which he asserted, among other claims, that trial counsel "failed to object to the issue" that the foreperson of the grand jury had "unlawfully exceeded the duly elected term and was not properly serving in the position"

---

[3] Though the record does not indicate precisely when, at some point after the July 29, 2022, hearing, and before the September 26, 2022, amendment, the Petitioner elected to proceed pro se with substitute post-conviction counsel acting in an advisory capacity. Accordingly, we will hereinafter refer to substitute post-conviction counsel as "elbow counsel."

[4] Despite its title, this is only the second amendment to the Petitioner's petition for post-conviction relief in the record.

- 4 -

when the Petitioner was indicted. He also argued trial counsel failed to subpoena Mr. Thomas to testify at his trial, which would have allowed trial counsel to "cross-examine[]" Mr. Thomas and note the "inconsistences between" his and Mr. Morrison's testimonies. He further alleged "trial counsel could have demonstrated that this case exists solely because of the false statements made by [Mr.] Morrison" and that Mr. Morrison's testimony was "foreseeable."

On June 22, 2023, the Petitioner filed a motion seeking the "production of grand jury transcripts" to determine "whether statements made at the grand jury hearing [were] consistent with trial testimony and the finding of probable cause." The trial court denied this motion the same day it was filed, noting that "there are no transcripts made of grand jury proceedings[,] and none exist" in this case.

On January 23, 2024, the Petitioner filed another amendment to his post-conviction petition, titled "Supplemental Case Law and Argument for Petition," in which he argued Mr. Thomas made false statements to the officers investigating the victims' murders and that these statements formed the basis of the Petitioner's "entire indictment" in this case. He also argued trial counsel rendered ineffective assistance by failing to "present[] evidence laying the groundwork for a full examination of [Mr.] Harris-Henderson" regarding the feud between the Morrison and Harris branches of the Petitioner's family.

The post-conviction court resumed the Petitioner's evidentiary hearing on June 3, 2024. The Petitioner noted at the outset of the evidentiary hearing that he had intended to call Mr. Thomas to testify at the hearing, but he and his elbow counsel were unable to locate Mr. Thomas. He noted that a subpoena had been issued "months ago" to compel Mr. Thomas's presence at the evidentiary hearing and that there was an outstanding warrant for his arrest. The Petitioner argued that Mr. Thomas gave a "coerced," false statement to the officers investigating the victims' murders and that this statement was "inconsistent and contradicted." He conceded that Mr. Thomas did not testify before the grand jury, but maintained that without his "coerced" statement, he would not have been indicted. He also posited that this statement was inconsistent with Mr. Morrison's testimony.

The Petitioner testified that if trial counsel had called Mr. Thomas to testify at his trial, he would have asked whether Mr. Thomas gave, signed, or wrote a statement to the police. He stated he discussed this topic with trial counsel prior to trial and requested that trial counsel "follow up" on the matter, but trial counsel did not do so.

At the conclusion of the evidentiary hearing, the post-conviction court announced it would provide the Petitioner with one final opportunity to amend his petition before it ruled on his claims. In the Petitioner's June 3, 2024 amended petition, he maintained that he "wanted [Mr.] Thomas to be cross-examined so [he] could ask if his description of the

killer was coerced." He also stated he would have asked Mr. Thomas whether he testified before the grand jury.

On July 29, 2024, the post-conviction court entered a written order denying post-conviction relief. As relevant to this appeal, the post-conviction court concluded that because the Petitioner had failed to present Mr. Thomas to testify at his post-conviction evidentiary hearing, he was unable to establish any deficiency or prejudice in trial counsel's failure to call him as a witness at trial. The post-conviction court also noted that Mr. Thomas could have presented damaging testimony if called as a witness if he testified that the Petitioner was "holding him against his will" and "fleeing from the police." The post-conviction court further concluded that trial counsel was not ineffective in failing to elicit more detailed testimony regarding the incident giving rise to the feud between the Morrison and Harris branches of the Petitioner's family, noting that the trial court had concluded that such evidence was irrelevant following a hearing pursuant to Tennessee Rule of Evidence 403. The post-conviction court reasoned that trial counsel "cannot be faulted for not presenting proof to a greater extent because [the trial] court would not allow him to do so." Finally, the post-conviction court found there was "nothing wrong with the dates and signatures on the indictment," which was "signed by the duly appointed foreperson" who was "properly serving . . . when the [P]etitioner was indicted." Thus, the trial court found no ineffective assistance in trial counsel's failure to object to the Petitioner's alleged deficiencies in the grand jury process. This timely appeal followed.

## II.   ANALYSIS

On appeal, the Petitioner argues the post-conviction court erred by failing to find that he received the ineffective assistance of counsel due to trial counsel's failure to (1) present a witness in support of his defense, (2) cite favorable law during an evidentiary hearing or make an offer of proof following the trial court's adverse ruling, and (3) object to alleged inconsistencies in the grand jury process. The State responds that the post-conviction court appropriately denied relief. We agree with the State and will address these issues in turn.

The Post-Conviction Procedure Act provides relief only when the petitioner's "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. In a post-conviction proceeding, the petitioner has the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. S. Ct. R. 28, Sec. 8(D)(1). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). The post-conviction

court's findings of fact are conclusive on appeal unless the evidence preponderates against them, *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (citations omitted), while its application of the law to those factual findings and the conclusions drawn therefrom are reviewed *de novo* with no presumption of correctness, *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020) (citations omitted).

Both the Constitution of the United States and the Constitution of Tennessee provide the criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); Tenn. Const. art. 1, § 9 ("That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel"); *see also Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). To succeed on a claim of the ineffective assistance of counsel, the post-conviction petitioner must prove, and the record must affirmatively establish, both that counsel performed deficiently and that this deficient performance adversely impacted the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 693 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "A court need not address both prongs if the petitioner fails to demonstrate either one of them." *Davidson*, 453 S.W.3d at 393 (first citing *Strickland*, 466 U.S. at 697, and then *Garcia v. State*, 425 S.W.3d 248, 257 (Tenn. 2013)). Each element of the *Strickland* analysis of an ineffective assistance of counsel claim is a mixed question of law and fact that this court reviews *de novo*. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)); *Kendrick*, 454 S.W.3d at 457.

Deficient performance is that which, in consideration of "all the circumstances" and the prevailing professional norms at the time of counsel's representation, falls below an objective standard of reasonableness. *Id*. (quoting *Strickland*, 466 U.S. at 688). We defer to counsel's strategic and tactical decisions, even if such decisions were unsuccessful or harmful to the defense, so long as they were "informed ones based upon adequate preparation." *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). In other words, so long as counsel's decisions are made after adequate preparation, this court "will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Berry v. State*, 366 S.W.3d 160, 172-173 (Tenn. Crim. App. 2011). Thus, a petitioner who alleges the ineffective assistance of counsel must, through clear and convincing evidence, overcome the strong presumption "that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted).

The post-conviction petitioner must also prove that counsel's deficient performance affected the outcome of his or her trial; that is, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome" of the trial. *Id*. Accordingly, "a petitioner must establish that counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Mobley v. State*, 397 S.W.3d 70, 81 (Tenn. 2013) (internal quotation marks omitted) (citing *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008)).

First, the Petitioner alleges that trial counsel rendered ineffective assistance by failing to present Mr. Thomas as a witness during his trial. The Petitioner contends trial counsel could have then "cross-examined" Mr. Thomas regarding certain inconsistencies which he posits would exist between Mr. Thomas's recollection of the events giving rise to the Petitioner's charges and Mr. Morrison's testimony. The Petitioner also argues Mr. Thomas's testimony could have further indicated that his charges arose "solely because" of Mr. Morrison's false statements.

This claim is unavailing because, as the Petitioner concedes, he did not present Mr. Thomas to testify at his post-conviction evidentiary hearing. A post-conviction petitioner who alleges the ineffective assistance of counsel based upon a theory that trial counsel failed to present a witness in support of his defense must produce that witness at his evidentiary hearing. *Taylor v. State*, 443 S.W.3d 80, 85 (Tenn. 2014) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Black*, 794 S.W.2d at 757. Though the Petitioner generally avers that Mr. Thomas's testimony would have served his defense by contradicting Mr. Morrison's incriminatory testimony, "neither a trial judge or an appellate court can speculate or guess . . . what a witness's testimony might have been if introduced by defense counsel." *Id*. As this court has repeatedly held, the assertion of such a claim in the absence of any proof to substantiate it renders the Petitioner's allegation of ineffective assistance meritless. *See, e.g.*, *Smith v. State*, No. W2022-00912-CCA-R3-PC, 2023 WL 2906355, at *8 (Tenn. Crim. App. Apr. 12, 2023), *no perm. app. filed*; *Stokes v. State*, No. W2018-01435-CCA-R3-PC, 2019 WL 5681476, at *9 (Tenn. Crim. App. Oct. 31, 2019), *perm. app. denied* (Tenn. Feb. 27, 2020); *Horstead v. State*, No. M2015-01070-CCA-R3-PC, 2016 WL 3008663, at *5 (Tenn. Crim. App. May 18, 2016), *perm. app. denied* (Tenn. Sept. 22, 2016); *Turner v. State*, No. M2012-00655-CCA-R3-PC, 2013 WL 772776, at *7 (Tenn. Crim. App. Feb. 27, 2013), *perm. app. denied* (Tenn. June 12, 2013). Accordingly, the Petitioner has failed to meet his burden of proof on this claim.

Next, the Petitioner argues that trial counsel rendered ineffective assistance by failing to both cite favorable law during an evidentiary hearing and make an offer of proof following the trial court's adverse ruling. At trial, trial counsel informed the State that he

intended to call Mr. Harris-Henderson to testify regarding the incident giving rise to the feud between the Morrison and Harris branches of the Petitioner's family. Trial counsel argued this testimony would be used to prove that the disagreement was "much more than a feud" and to show Mr. Morrison's potential bias against the Petitioner. The State objected to such testimony on relevance grounds, and the trial court held a jury-out hearing to determine the testimony's admissibility. At the hearing, Mr. Harris-Henderson testified that the feud began in the 1980s following a "[m]ajor" incident between the Petitioner's father, Eddie Harris, Sr., and George Morrison. Following arguments, the trial court held that the specific details of the incident were irrelevant pursuant to Tennessee Rule of Evidence 403 but permitted Mr. Harris-Henderson to testify generally regarding the "animosity" between the Morrison and Harris branches of the Petitioner's family.

The Petitioner argues trial counsel performed deficiently during this evidentiary hearing because he failed to cite to *United States v. Abel*, 469 U.S. 45 (1984), as well as to "other favorable court rulings" during his arguments. However, the Petitioner has waived appellate review of this claim by failing to present it first to the post-conviction court in his petition for post-conviction relief, in any of the numerous amendments thereto, or during his arguments at either of his evidentiary hearings. *See* Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," subject to two limited exceptions inapplicable to this case); *Walsh v. State*, 166 S.W.3d 641, 645-46 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."). We also note that the Petitioner neglects to specifically identify what "other favorable court rulings" he posits counsel should have presented to the trial court and fails to present an argument as to how trial counsel's failure to do so resulted in prejudice to his defense. Accordingly, even if this claim were properly before us, we would find it waived for appellate review. *See* Tenn. R. App. P. 27(a)(7) (requiring appellants to present a brief which sets forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on."); Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *Claxton v. State*, No. W2023-01324-CCA-R3-PC, 2024 WL 4823661, at *2 (Tenn. Crim. App. Nov. 19, 2024), *no perm. app. filed* (holding that a post-conviction petitioner waives a claim of ineffective assistance where he "makes no argument that trial counsel performed deficiently or that counsel's deficient performance prejudiced the defense.").

Relatedly, the Petitioner argues trial counsel performed deficiently during the evidentiary hearing because he failed to make an offer of proof following the trial court's

restriction of Mr. Harris-Henderson's testimony. He maintains that Mr. Harris-Henderson's testimony would have demonstrated that the nature of the feud between the Morrison and Harris families was "something severe" and would have assisted in demonstrating Mr. Morrison's potential bias against the Petitioner. However, the Petitioner also failed to present Mr. Harris-Henderson as a witness at either of his post-conviction evidentiary hearings to testify as to what he would have said at trial had the trial court not ruled that such testimony was irrelevant or if trial counsel had made an offer of proof. Again, we are without the ability to speculate as to how Mr. Harris-Henderson would have testified, so the Petitioner's failure to present this evidence precludes a finding of prejudice. *See Hill v. State*, No. E2014-01686-CCA-R3-PC, 2015 WL 5275964, at *7 (Tenn. Crim. App. Sept. 10, 2015), *perm. app. denied* (Tenn. Dec. 10, 2015) (concluding that a petitioner who asserts a claim of ineffective assistance of counsel based on counsel's failure to make an offer of proof of a witness's proposed testimony is unable to demonstrate that such a failure prejudiced the defense unless the petitioner presents that witness's testimony at the post-conviction evidentiary hearing); *see also Black*, 794 S.W.2d at 757. Accordingly, the Petitioner has failed to meet his burden of proof on this claim.

Finally, the Petitioner argues that trial counsel rendered ineffective assistance by failing to object to certain alleged inconsistencies in the grand jury process. Specifically, the Petitioner asserts that the grand jury foreperson's term "should have expired long before he presided over [the] Petitioner's [g]rand [j]ury process." He asserts that this claim may be "proven by the dates and signatures on the indictment" and requests this court to "investigate and rule upon the legitimacy of the foreperson in this case." The State responds that this claim is waived due to inadequate briefing.

We agree with the State. Except for a citation to his initial post-conviction petition and the post-conviction court's July 29, 2024 order denying relief, the Petitioner cites neither to any law or portion of the record in support of this claim. The basic rules of this court require more. *See* Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b); *State v. Bonds*, 502 S.W.3d 118, 144 (Tenn. Crim. App. 2016) (holding that this court will "refuse to speculate about which pieces of evidence [an appellant] may find objectionable" where the appellant's brief "fails to specifically identify which evidence he deems improper" and makes only a "general complaint" about the evidence). Simply put, it is not this court's role nor its duty "to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). Accordingly, this claim is waived, and the Petitioner is not entitled to post-conviction relief.

### III. CONCLUSION

Following our review of the record and based on the foregoing analysis, we affirm the judgment of the post-conviction court.


s/ *STEVEN W. SWORD*
STEVEN W. SWORD, JUDGE